IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

IN RE:   Don Bryce Cozart                                    No.  5:08-bk-73392
                                                                              Ch. 7


Curt and Katherine Calaway                                              Plaintiffs

vs.                              5:08-ap-07179

Don Bryce Cozart                                                        Defendant


**MEMORANDUM OPINION**

On August 26, 2008, the debtor, Don Bryce Cozart [Cozart], filed a voluntary petition for relief under chapter 7 of the bankruptcy code. On October 17, 2008, the plaintiffs, Curt and Katherine Calaway [Calaways], timely filed a complaint under 11 U.S.C. § 523(a)(2)(A) and (a)(6) to determine the dischargeability of a debt owed by Cozart to the Calaways in the amount of $346,403.76, plus $14,395.77 in expenses, plus costs relating to the purchase of a residence from Cozart. More specifically, the debt is based on a settlement agreement between the parties dated March 25, 2008. The Calaways also prayed for modification of the automatic stay under § 362(d) to permit the entry of a judgment of non-dischargeability into the registry of the state court in order to proceed with collection remedies available to them under the law. On November 3, 2008, Cozart filed an answer to the complaint. The Court held a trial on the merits on April 14, 2009, at the conclusion of which it took the matter under advisement. For the reasons stated below, the Court denies the Calaways' complaint and, accordingly, also denies the request to modify the automatic stay.

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding under 28 U.S.C. § 157(b)(2)(I). The following opinion

constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**Background**

The Calaways purchased a residence from Covington Custom Homes, Inc./Don Cozart on September 11, 2006. After experiencing problems with the house, the Calaways hired different professionals to assess the structure and provide an estimate of the damage and cost to repair. On February 5, 2007, the Calaways filed a lawsuit in state court against Don Cozart and some of his related corporate entities involved with the construction of the residence for rescission, fraud, breach of implied warranty, and other causes of action. On June 27, 2007, Don Cozart was dismissed from the lawsuit by order of the state court. (Pls.' Ex. 2, ¶ 40.) On September 10, 2007, the Calaways filed a First Amended Complaint, again naming Don Cozart as a defendant. According to the state court Judgment, filed January 28, 2008, Cozart was never served in accordance with Arkansas Rule of Civil Procedure 4 and never entered an appearance in the case. Accordingly, the state court judge found that the court did not have jurisdiction over Cozart and could not award any relief against him individually. In the state court action, the court ordered Covington Custom Homes, Inc. [Covington] to rescind the purchase of the residence within 30 days. If Covington failed to accomplish the rescission, the Calaways would be entitled to a judgment against Covington in the amount of $346,403.76 plus other expenses and costs. Both parties appealed the decision of the state court. (Pls.' Exs. 4, 5.)

On March 25, 2008, before the appeal was heard, the parties (including Don Cozart, individually) entered into a Settlement Agreement. The terms of the Settlement Agreement, in part, required Cozart and/or Covington to acquire the residence from the Calaways by September 25, 2008, for $468,000.00. In the event the residence was not purchased by September 25, the Calaways were entitled to file a Consent Judgment against Cozart and/or Covington for damages in the amount of $346,403.76, plus $14,395.77 in expenses, plus post-judgment interest at the maximum rate allowed by law.

2

On August 26, 2008, prior to the acquisition of the residence or the entry of the Consent Judgment, Cozart filed his chapter 7 petition.

**Position of the parties**

The Calaways argue first that the findings of fact as determined by the state court judge are sufficient to prove Cozart obtained money from the Calaways by false pretenses, false representations, and actual fraud relating to the purchase of the residence. Accordingly, this Court should look behind the settlement agreement and determine that the debt was incurred by means of fraud and is not dischargeable. In the alternative, they argue that the alleged debt was incurred through willful and malicious injury by Cozart and that Cozart misled them into entering into the settlement agreement knowing that he had no intention of performing under the terms of the agreement.

Cozart argues first that the Calaways are precluded from bringing another action against him under the doctrine of res judicata and collateral estoppel. According to Cozart, his dismissal from the initial state court suit combined with the failure to obtain service on him when the complaint was amended and he was added as a defendant was enough to be considered an adjudication on the merits and precludes the Calaways from bringing this adversary proceeding. In the alternative, Cozart argues that the Calaways did not rely on any representations made by him prior to entering into the settlement agreement.

**Preliminary issues**

Before deciding whether the Calaways' debt was the result of a willful and malicious injury by Cozart, or whether they entered into the settlement agreement based on the false pretenses, false representations, or actual fraud of Cozart, the Court will address the other arguments raised by the parties in turn.

### Res judicata and collateral estoppel

Cozart argues that the doctrines of res judicata or collateral estoppel prevent the Calaways from bringing the present adversary proceeding against Cozart. "Under the

3

doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). The Eighth Circuit test for whether the doctrine of res judicata bars litigation of a claim requires the examination of three elements: (1) whether a court of competent jurisdiction rendered the prior judgment, (2) whether the prior judgment was a final judgment on the merits, and (3) whether both cases involve the same cause of action and the same parties. *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1014 (8th Cir. 2002). Neither party suggested that the state court acted beyond the scope of its jurisdiction over the parties before it or the subject matter of the lawsuit, and the Court finds that the state court was a court of competent jurisdiction. Additionally, the judgment rendered by the state court is a final judgment on the merits, as exhibited by the competing notices of appeal, and both cases involve the same cause of action relating to the purchase of the residence. However, the state court case and this case do not involve the same parties. Cozart was initially named as a defendant in the state court suit. For whatever reason, Cozart was dismissed from that suit on June 27, 2007. Although Cozart was re-named a defendant in a later filed amended complaint, the state court found that he was never properly served and the state court did not have jurisdiction over him. Accordingly, the doctrine of res judicata cannot apply in this case because Cozart was not a party in the state court case.[1]

Likewise, collateral estoppel is not applicable in this instance relating to the allegation of fraud and the initial sale of the house. To apply the doctrine of collateral estoppel, the Court must look to the substantive law of the forum state. *Fisher v. Scarborough* (*In re Scarborough*), 171 F.3d. 638, 641 (8th Cir. 1999). In Arkansas, there are four elements required to establish collateral estoppel: "(1) the issue sought to be precluded must be the

---

[1] Neither party argued or presented any evidence that Cozart and Covington were in privity with each other, and the Court is making no determination in this regard. A finding of privity is a question of fact to be made on a case by case basis. *Falk v. Hecker* (*In re Falk*), 98 B.R. 472, 475 (D. Minn. 1989)(citing *Amalgamated Sugar Co. v. NL Indus.*, 825 F.2d 634, 641 (2d Cir.)).

4

same as that involved in prior litigation; (2) that issue must have been actually litigated; (3) the issue must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment." *Riverdale Dev. Co. v. Ruffin Bldg. Sys., Inc.*, 146 S.W.3d 852, 855 (Ark. 2004). Unlike res judicata, collateral estoppel does not require mutuality of parties before the doctrine is applicable. *Id.*[2]

Here, the issue sought to be precluded by Cozart relates to the alleged fraud committed by Cozart with regard to false representations or false pretense and the subsequent purchase of the residence by the Calaways. Conversely, the Calaways appear to be using collateral estoppel offensively to introduce the state court findings of fact that show that Cozart made false representations regarding the residence, even though Cozart was not a party to the state court lawsuit. To the extent this adversary proceeding attempts to determine the dischargeability of the debt relating to the initial purchase of the residence, the issue presented under § 523(a)(2) as it relates to the sale of the residence is the same issue involved in the state court action.

Collateral estoppel, typically, is used by a defendant to preclude a plaintiff from relitigating an issue that has previously been decided adversely to the plaintiff. *Riverdale Dev. Co. v. Ruffin Bldg. Sys., Inc.*, 146 S.W.3d 852, 855 (Ark. 2004). In this case, Cozart is attempting to use collateral estoppel to preclude the Calaways from relitigating the

---

[2] Historically, res judicata was a broad term that encompassed both issue preclusion and claims preclusion. *Lane v. Peterson*, 899 F.2d 737, 741 n.3 (8th Cir. 1990). Now, res judicata is often used in a narrower sense, referring only to claims preclusion and not collateral estoppel or issue preclusion. *Id.* As stated above, res judicata or claims preclusion requires the same cause of action and the same parties. Although collateral estoppel was originally also limited by the principal of mutuality--in other words, neither party could use a prior judgment unless both parties were bound by the judgment--the mutuality requirement has been abandoned under federal law. *Id.* at 741. According to the Eighth Circuit, "a party may rely on collateral estoppel even though he or she is not bound by the prior judgment if the party against whom it is used had a full and fair opportunity and incentive to litigate the issue in the prior action." *Id.* (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 (1979)).

issue of fraud and the subsequent purchase of the residence by the Calaways as it relates to Cozart. Even though Cozart was not a party in the state court lawsuit, because there is no mutuality requirement for collateral estoppel, the doctrine is available to Cozart. However, the missing element in the application of collateral estoppel is a state court decision adverse to the Calaways. In fact, the Calaways prevailed in their state court action and obtained a judgment against Covington. Without an adverse decision, the doctrine of collateral estoppel is not applicable.

Arkansas also recognizes the offensive use of collateral estoppel. *Johnson v. Union Pacific R.R.*, 104 S.W.3d 745 (Ark. 2003)(recognizing offensive use of collateral estoppel in limited cases and adopting the test promulgated by the Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331 (1979)). Offensive collateral estoppel occurs when a plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. *Riverdale Dev. Co.*, 146 S.W.3d at 855. It appears that the Calaways are attempting to use offensive collateral estoppel to introduce the state court findings of fact relating to Cozart's alleged false representations in the state court lawsuit, effectively preventing Cozart from presenting a defense to that finding in this adversary proceeding. Similarly, in *Johnson*, the plaintiff relied upon collateral estoppel to prevent the defendant from relitigating a defense. *Johnson*, 104 S.W.3d at 750. However, in *Johnson*, the defendant had previously litigated the defense in another lawsuit involving another plaintiff and lost. After reviewing the offensive use of collateral estoppel in this manner, the Arkansas Supreme Court adopted the test promulgated by the United States Supreme Court: "The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.* (quoting *Parklane Hosiery*, 439 U.S. at 331).

At first blush, it does not appear that the offensive use of collateral estoppel is appropriate in this adversary proceeding. Cozart is not attempting to raise a defense that

was already litigated in the state court case against another plaintiff. The plaintiff in the state court lawsuit and the plaintiff in this adversary proceeding are the same. The Calaways are attempting to use the state court's findings of fact that relate to Cozart individually in this adversary proceeding, even though Cozart was not a party to the state court lawsuit. Regardless, to the extent offensive collateral estoppel is being considered, following the general rule of law as stated in *Johnson*, the Court finds that the Calaways use of offensive collateral estoppel in this instance would be unfair to Cozart. The Calaways named Cozart in the initial state court action and then dismissed him. After re-adding him to the lawsuit, the Calaways did not, or were unable to, properly serve Cozart and the state court found that it lacked personal jurisdiction over Cozart. Although Cozart did appear at the state court trial on the second day as a witness, he was not a party to the lawsuit and, as such, never had the opportunity to present a defense to the allegations as they related to him, individually. Under either the doctrine of collateral estoppel or due process, the Court finds that the state court findings of fact related to Cozart individually are not applicable in this adversary proceeding.

### Look behind the settlement agreement

The Calaways also ask this Court to look behind the settlement agreement to determine whether the debt embodied in the settlement agreement is a debt that was incurred by fraud. The authority to look behind the settlement agreement was stated by the Supreme Court in *Archer v. Warner*, 538 U.S. 314 (2003) and *Brown v. Felsen*, 442 U.S. 127 (1979). The Court outlined the circumstances involved in *Archer* as follows: "(1) *A* sues *B* seeking money that (*A* says) *B* obtained through fraud; (2) the parties settle the lawsuit and release related claims (3) the settlement agreement does not resolve the issue of fraud, but provides that *B* will pay *A* a fixed sum; (4) *B* does not pay the fixed sum; (5) *B* enters bankruptcy; and (6) *A* claims that *B*'s obligation to pay the fixed settlement sum is nondischargeable because, like the original debt, it is for 'money . . . obtained by . . . fraud.'" *Archer*, 538 U.S. at 316-17. The only significant difference in the *Brown* case is that the state court entered a consent decree embodying a stipulation by the parties rather than settling the lawsuit. *Id.* at 319. In each of these cases, the Court recognized that the

bankruptcy court was not prevented from looking "beyond the record of the state-court proceeding and the documents that terminated that proceeding (the stipulation and consent judgment) in order to decide whether the debt at issue (namely, the debt embodied in the consent decree and stipulation) was a debt for money obtained by fraud." *Id.* at 320.

The one fact that is present in *Archer* and *Brown*, but not in the case before this Court, is the existence of an underlying debt resulting from, initially, a lawsuit that was resolved through stipulation or settlement agreement. In this case, Cozart was dismissed from the underlying lawsuit. Although there is a settlement agreement in this case, the agreement is not based on an underlying debt, unlike the agreements in both *Archer* and *Brown*. The Calaways obtained a judgment against Covington,[3] but they did not obtain a judgment against Cozart. The debt against Cozart first arose in the settlement agreement itself. Without an underlying debt, this Court cannot look beyond the settlement agreement; there was no debt owed by Cozart prior to his entering into the settlement agreement.[4]

**Law**

The remaining issues for the Court to decide are whether the Calaways' debt was the result of a willful and malicious injury by Cozart, and whether they entered into the settlement agreement based on the false pretenses, false representations, or actual fraud of Cozart. The Court will address these in turn.

---

[3] The status of the judgment against Covington is not before this Court and the Court is making no ruling as to the effect of the Satisfaction of Judgment filed in state court on April 22, 2008. (Pls.' Ex. 12.)

[4] During opening statements, counsel for the Calaways acknowledged that there was no judgment against Cozart, and stated to the Court that the debt that is the subject of the Calaways' adversary proceeding is the settlement agreement.

### Willful and malicious injury under § 523(a)(6)

Under § 523(a)(6), a debtor cannot discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In the Eighth Circuit, the debt must be for both a willful injury *and* a malicious injury. *Blocker v. Patch* (*In re Patch*), 526 F.3d 1176, 1180 (8th Cir. 2008). The meaning of willful is controlled by the Supreme Court's decision in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998). In that case, the Court found that the word willful modified injury, and in order to find that a willful injury occurred, there must be a deliberate or intentional injury, not merely a deliberate or intentional act that caused an injury. *Id.* at 61. Further, if the debtor knows "that the consequences are certain, or substantially certain, to result from his conduct, the debtor is treated as if he had, in fact, desired to produce those consequences." *Patch*, 526 F.3d at 1180 (citing *Geiger v. Kawaauhau* (*In re Geiger*), 113 F.3d 848, 852 (8th Cir. 1997)(en banc)). Additionally, the injury must have been malicious. Malice requires conduct that is specifically "targeted at the creditor . . . , at least in the sense that the conduct is certain or almost certain to cause financial harm." *Barclays Am./Bus. Credit v. Long* (*In re Long*), 774 F.2d 875, 881 (8th Cir. 1985).

The injury in this instance is Cozart's breach of the settlement agreement and the resulting damages set forth in the agreement. However, "a simple breach of contract is not the type of injury addressed by § 523(a)(6)." *Snoke v. Riso* (*In re Riso*), 978 F.2d 1151, 1154 (9th Cir. 1992). Rather, it requires an intentional tort involving willful and malicious conduct. *Kawaauhau*, 523 U.S. at 62; *Long*, 774 F.2d at 882. The Calaways did not provide to the Court proof that the breach of the settlement agreement was anything more than a breach of contract. Nor can the Court find that Cozart knew or should have known that he would not be able to buy back the residence. As will be discussed below, Cozart entered into the settlement agreement with the expectation that other property he owned would be sold and sufficient assets received to enable him to honor the agreement. The Court cannot find that Cozart caused a deliberate or intentional injury sufficient to satisfy the willful prong of § 523(a)(6). Without a willful injury, the malicious prong is not implicated. Accordingly, the Calaways' allegation

9

under § 523(a)(6) fails and the Court denies the Calaways' complaint to determine dischargeability under § 523(a)(6).

### False representation under § 523(a)(2)(A)

The issue remaining for the Court is whether the Calaways entered into the settlement agreement based on the false pretenses, false representations, or actual fraud of Cozart. Section 523(a)(2)(A) of the bankruptcy code states that discharge is not available to a debtor for any debt for money, property, or services obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Under § 523(a)(2)(A), to prevail the Calaways must prove by a preponderance of the evidence "(1) that the debtor made a representation; (2) that at the time the debtor knew that the representation was false; (3) that the debtor made the representation deliberately and intentionally with the intention and purpose of deceiving the creditor; (4) that the creditor justifiably relied on such representation; and (5) that the creditor sustained the alleged loss and damage as the proximate result of the representation having been made." *Merchants Nat'l Bank of Winona v. Moen* (*In re Moen*), 238 B.R. 785, 790 (B.A.P. 8th Cir. 1999)(quoting *In re Ophaug,* 827 F.2d 340 (8th Cir.1987)). Unless there is sufficient proof as to each element, judgment cannot be entered for the Calaways.

The settlement agreement on its face is sufficient to satisfy the first element under § 523(a)(2)(A). Cozart signed the agreement in his individual capacity, and agreed to pay the Calaways $468,000.00 to acquire the residence. In the event Cozart failed to close the transaction according to the terms of the agreement, the Calaways would be entitled to file a consent judgment against Cozart in the amount of $346,403.76, plus $14,395.77 in expenses, plus post-judgment interest at the maximum rate allowed by law. This is the representation made by Cozart and the Court finds that the Calaways met the first element.

To satisfy the second element under § 523(a)(2)(A), the Calaways need to prove that Cozart entered into the settlement agreement with the knowledge that he would not be able to satisfy or honor the agreement; in other words, that it was a false representation. Curt Calaway testified that Cozart never attempted to make repairs to the house or show it to prospective purchasers after entering into the settlement agreement, even though Cozart had six months to rescind the sale. According to Cozart, the reason he made no attempts to sell or repair the home was because he only needed $90,000.00 to rescind the sale (based on an 80% loan), and the $90,000.00 would come from the sale of other property he owned. Cozart voluntarily entered into the settlement agreement at a time when he was attempting to sell real property on which a convenience store [C-store] was located. He expected the C-store sale to close prior to September 25, the date the consent judgment could be entered against him. Had the C-store sale taken place, Cozart testified that he would have had enough money to obtain an 80% loan and buy back the Calaways' home. According to Cozart, he filed his voluntary petition in August because another creditor had obtained a judgment against him personally. The C-store ultimately was sold in September and the sale closed in October.

Cozart testified that he filed his bankruptcy petition because he had entered into another settlement agreement with another creditor under substantially the same terms. The six months in which Cozart had to rescind the sale to the other creditor was about to expire and he had not yet closed on the C-store sale. Relating to that creditor's settlement agreement, Cozart introduced a Memorandum of Understanding that states that the purchaser of the C-store would "assist Cozart in obtaining $90,000.00 by Tuesday August 26, 2008 for the purpose of puchasing a home in Covington Park (Lot 122)." (Defs.'s Ex. 3.)[5] This is further evidence that Cozart's testimony with regard to his intention to rescind the sale of the Calaways' residence is credible.

---

[5] Although the Memorandum of Understanding is not signed by Cozart, it is signed by the purchaser of the C-store indicating the purchaser's understanding of the purpose of the Memorandum of Understanding.

11

Cozart was under no obligation to enter into the settlement agreement, and by doing so, agreed to become personally liable to the Calaways if he was not able to rescind the sale prior to September 25.  This is an additional indication to the Court that Cozart intended to honor the settlement agreement when he entered into it.  Cozart testified that he had the ability to honor the agreement when it was signed based on the sale of the C-store and other houses owned by Covington.  He also testified that after the settlement was entered into, the housing market started to decline and, because of other judgments against Covington, Covington was not able to sell any houses.  Cozart testified that even after he filed his bankruptcy petition, he wanted to dismiss his bankruptcy case, close his contracts, and honor the outstanding settlements, including the agreement with the Calaways.

The Court finds that at the time Cozart entered into the settlement agreement he believed he would be able to satisfy the agreement with the sale of the C-store and did not falsely represent to the Calaways otherwise by entering into the settlement agreement.  Based on this finding, the Court finds that the Calaways failed to prove the second element by a preponderance of the evidence.

In the absence of a false representation, the remaining elements also fail.  The third element is that he made the representation with the intention and purpose of deceiving the Calaways.  As discussed above, the Court finds that Cozart intended to honor the settlement agreement at the time the agreement was entered into and did not enter into the agreement with a deceitful intent or purpose.  The fourth element is that the Calaways justifiably relied on the representation.  While there may be a question as to the Calaways' justifiable reliance on the representation, given that Mr. Calaway is a Certified Public Accountant and apparently did not inquire about Cozart's financial condition prior to entering into the settlement agreement, there was no other reason to believe that the Calaways did not justifiable rely on the representation.  However, because the Court finds that Cozart did not make a false representation, the fourth element is not relevant.  Finally, the fifth element requires that the Calaways sustained the loss and damages as

the proximate result of the representation having been made. While the Calaways did sustain a loss as a result of the settlement agreement, this element contemplates a false representation having been made, and the Court finds that Cozart did not make a false representation. Accordingly, the Court denies the Calaways' complaint to determine dischargeability under § 523(a)(2)(A).

**Conclusion**

For the reasons stated above, the Court denies the Calaways' complaint. Further, Calaway's prayer for Modification of Stay is denied as moot as it relates to the debtor, Don Cozart. A modification of the automatic stay would be dependent upon the Court having concluded that at least some portion of the debt was non-dischargeable. The Court is making no finding with regard to Covington Custom Homes, Inc.

IT IS SO ORDERED.

July 6, 2009

DATE

BEN T. BARRY
UNITED STATES BANKRUPTCY JUDGE

cc: John G. Trice, attorney for Curt and Katherine Calaway
    Stanley V. Bond, attorney for Don Bryce Cozart
    Branch Fields, attorney for Don Bryce Cozart